UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| EMILY ERIN LABONA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5: 23-035-DCR |
| ) | |
| V. ) | |
| ) | |
| KILOLO KIJAKAZI, ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Emily LaBona appeals the Acting Commissioner of Social Security's denial of her application for Supplemental Security Income benefits. [Record No. 1] LaBona contends that Administrative Law Judge (ALJ) Karen R. Jackson failed to adequately explain her finding that a medical opinion was unpersuasive. But upon review of the record and the parties' arguments, the Court finds that the ALJ's decision was sufficiently detailed and based upon substantial evidence and correctly applied rules of law. As a result, the Acting Commissioner's decision will be affirmed.

**I. Background**

LaBona was a 42-year-old, living with her spouse, children, and in-laws at the time of ALJ Jackson's decision. [Record No. 8, p. 3] She obtained an associate degree in equine science and worked as a groom/stable attendant until May 2016. [Record Nos. 7-3, p. 17; 8, p. 3] Her disability allegedly began on January 26, 2009, consisting of various ailments, including mental health disorders, and back, knee, and ankle conditions. [Record No. 7-2, p. 17]

LaBona previously submitted applications for disability benefits in June 2016 and February 2018, but both were denied. [Record No. 7-3, p. 5] The Kentucky Division for Disability Determination Services[1] referred LaBona to Dr. Cristi M. Hundley for a mental status examination in connection with the plaintiff's June 2016 application. [Record No. 7-7, p. 2] Dr. Hundley examined her on August 10, 2016, determining *inter alia* that LaBona's "ability to interact appropriately in a work setting is moderately to markedly limited and her ability to handle the stresses typically associated with a work environment is moderately to markedly limited." [Record No. 7-7, p. 4]

LaBona submitted her most recent application on January 22, 2021. [Record No. 7-2, p. 25] Dr. Ifeanyi Nzegwu examined LaBona in April 2021, concluding that she "should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations," but the ALJ did not credit this opinion because "it [did] not consider the claimant's established back, knee, and ankle conditions." [Record No. 7-2, p. 23] Kay Barnfield, Psy.D., Donna Farmer, M.D., G. Stephen Perry, Ed.D., and P. Saranga, M.D., also reviewed the claimant's medical records for the state agency in 2021, finding that LaBona "would be able to perform medium work with moderate mental limitations[.]" [Record No. 7-2, p. 23] The ALJ determined that "[t]he opinions that [LaBona] would have moderate mental limitations are persuasive, as they are consistent with the medical evidence of record. However, the opinions that she could perform medium work are not persuasive, as new evidence received at the hearing level supports somewhat greater limitation." [*Id.*]

---

[1]   The Division for Disability Determination Services ascertains Kentucky residents' disability on behalf of the Commissioner of the United States Social Security Administration.

ALJ Jackson determined that the following conditions were severe: "degenerative joint disease of the bilateral knees; degenerative disc disease; right ankle sprain, status post right ankle arthroscopy with synovectomy, repair and augmentation of right anterior talofibular ligament with application of amniotic placental allograft; major depressive disorder; and generalized anxiety disorder[.]" [Record No. 7-2, p. 20] She concluded that LaBona could not perform her past equine work but had the capacity to conduct certain light work as defined in 20 C.F.R. § 416.967(b). [Record No. 7-2, pp. 21-22] Based on the vocational expert's testimony, there were jobs existing in significant numbers in the national economy that LaBona could perform, including garment sorter, housekeeper, and retail merchandise marker. [*Id.* at 25.] Thus, LaBona was not disabled under the Social Security Act.

The Appeals Council denied review on January 5, 2023, making the ALJ's decision the final agency decision. LaBona filed the instant action on February 13, 2023, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a decision of the Commissioner of Social Security denying an application for Supplemental Security Income benefits for lack of disability. [Record No. 1]

## II. Standard of Review

This Court's review is limited to determining whether "[t]he ALJ . . . applied the governing law correctly to reach a conclusion supported by substantial evidence." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U. S. 197, 229 (1938); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "[T]he threshold for such evidentiary sufficiency is not high," but it is "more than

a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).

### III. Discussion

#### A. Disability Evaluation Process

A "disability" under the Social Security Act is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination regarding disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional capacity (RFC) and relevant past work to

determine whether she can perform her past work. 20 C.F.R. § 404.1520(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

### B. The ALJ's Explanation and Evaluation of the Opinion Evidence

LaBona contends that the ALJ improperly failed to consider Dr. Hundley's medical opinion. A "medical opinion" is a statement from a medical source about what an individual can still do despite his impairments and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). ALJs should not defer or give specific evidentiary weight to any particular opinion. § 416.920c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion by considering the following factors: supportability; consistency; relationship with the plaintiff; specialization; and any other factor that tends to support or contradict the medical opinion. § 416.920c(c).

The first two factors, supportability and consistency, are the most important and the ALJ must explain how she considered them. § 416.920c(b)(2). The regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the

- 5 -

medical opinions . . . will be." § 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 416.920c(c)(2).

"To satisfy the substantial evidence standard, the ALJ must adequately explain why he weighed the evidence as he did." *Island Creek Ky. Mining*, 737 F.3d at 1056 (citing *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 478 (6th Cir. 2011)). "If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence." *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007). But the ALJ's explanation need not be lengthy. *See, e.g.*, *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 U.S. Dist. LEXIS 134907, at *27 (W.D. Tenn. July 20, 2021) (finding a detailed three-sentence explanation sufficient to be considered an explanation). "The ALJ is not required to discuss every detail presented in the 'voluminous case records' nor does she need to explain her evaluation of each portion of a medical source's opinion. *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). "[T]he measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 21-37, 2022 U.S. Dist. LEXIS 130309, at *8-9 (E.D. Ky. July 22, 2022).

LaBona contends that the ALJ failed to adequately explain her conclusion that Dr. Hundley's medical opinion was unpersuasive, which resulted in an improper omission of the doctor's proposed restrictions. [*Id.*] As an initial matter, the ALJ was not required to consider

Dr. Hundley's 2016 opinion because it pertained to LaBona's *previous* application, which the plaintiff failed to appeal after denial. *See Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 849 n.1 (6th Cir. 1986) ("[T]he denial of [the claimant's] initial application is final and binding and is not at issue in the present case."). *Cf. Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) ("[A]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."). Nevertheless, the ALJ in this case reasonably explained and concluded that Dr. Hundley's opinion was unpersuasive.

The ALJ stated that Dr. Hundley's remote opinion was inconsistent with subsequent evidence. The parties agree that the ALJ's finding of remoteness goes to the supportability of the evidence. [*See* Record No. 8, p. 8.] But "an ALJ can find a medical opinion to be unpersuasive solely because it is inconsistent with other evidence in the record." *Claunch v. Kijakazi*, No. 22-cv-00072, 2023 U.S. Dist. LEXIS 21102, at *8 (E.D. Ky. Feb. 8, 2023) (citing *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *4-5 (6th Cir. Dec. 1, 2022)). ALJ Jackson addressed Dr. Hundley's opinion as follows:

> Cristi Hundley, Ph.D. examined the claimant in August of 2016. Dr. Hundley diagnosed social anxiety disorder versus unspecified anxiety disorder; and specific learning disorder, mathematics, provisional. Dr. Hundley stated that the claimant would have would have [sic] mild limitation in her ability to understand and remember simple instructions; moderate limitations in her ability to maintain attention and concentration; moderate to marked limitation in her ability to interact appropriately in a work setting; and moderate to marked limitation in her ability to handle the stresses typically associated with a work environment (Exhibit B1A). *This opinion is not persuasive, as it is now remote and is inconsistent with more recent medical evidence.*

[Record No. 7-2, p. 23 (emphasis added)] The ALJ then reviewed specific recent medical evidence supporting the RFC, namely: (1) orthopedic examinations through February 2022,

- 7 -

(2) physical therapy forms from April and November 2021; and (3) mental health notes from January 2020 through January 2022. [*See* Record No. 7-2, p. 23-24.]

The recent medical evidence indicated that LaBona had a normal gait and "had no problem with any of her usual activities; with getting in and out of the bathtub; lifting objects from the floor; performing light or heavy activities around her house; and only a little difficulty standing for an hour or walking a mile." [*Id.*] The ALJ stated that the recent mental health notes "described the claimant as fully oriented, with intact memory, clear and normal speech, logical and goal-directed thought processes, appropriate judgment, intact insight, and no involuntary or abnormal motor movements." [*Id.* at 24.] LaBona also "reported that she takes care of almost all the childcare and household responsibilities in her home, . . . and she testified that she cares for one special-needs child who requires attention 24/7 due to aggression." [*Id.*] The ALJ determined that these activities reflect abilities consistent with the residual functional capacity to perform light work. [*Id.*]

ALJ Jackson's details adequately illustrate the inconsistency between Dr. Hundley's report and subsequent mental health notes, enabling the court to undertake a meaningful review of the ALJ's finding. Dr. Hundley's report tends to illustrate a moderate to marked limitation in emotional and mental capacity, but more recent reports state that LaBona's mental symptoms "improved overall with . . . medications and therapy." [Record No. 7-8, p. 168] Her thought processes were goal-oriented, linear, and logical with developmentally appropriate judgment and insight. [Record No. 7-8, p. 154] Accordingly, the ALJ's finding that Dr. Hundley's 2016 report was remote and inconsistent is supported by substantial evidence and an adequate basis for determining the report lacked persuasiveness. *See Richardson v. Saul*, No. 20-cv-489, 2021 U.S. Dist. LEXIS 161602, at *29 (D. N.H. Aug. 26,

2021) (noting that a persuasiveness finding based solely on consistency grounds would have been sufficient for the ALJ to find a medical source's opinion less persuasive).

### C. Substantial Evidence Otherwise Supports the ALJ's Decision

The RFC is supported by substantial evidence, including orthopedic examination records, physical therapy notes, and mental health documentation. [*See* Record No. 7-2, pp. 21-25.] LaBona visited CHI Saint Joseph Primary Care Associates on January 26, 2022, and February 7, 2022, showing a "normal gait," and a spine with "normal alignment and range of motion[.]" [Record No. 7-8, pp. 200, 207.] Her visits to Resilience Physical Therapy on April 5, 2021, and November 22, 2021, indicate that LaBona was able to mow her grass and had no difficulty in "[a]ny of [her] usual . . . housework," or routine activities, such as "[g]etting into or out of the bath." [Record Nos. 7-7, p. 115; 7-8, p. 129] Her sessions with clinical social worker Eric M. Patrick on January 3, 2020, and January 26, 2021, state that LaBona took care of her nieces and nephews and was the "primary caretaker for her children." [Record No. 7-7, pp. 8, 56] Therapy notes from a New Vista Outpatient appointment on January 21, 2022, states that LaBona is able to "do[] most things around the house." [Record No. 7-8, p. 96]

The ALJ relied on the above records, and "[a]fter careful consideration of the entire record," found that LaBona "has the residual functional capacity to perform light work[.]" [Record No. 7-2, pp. 21-25] Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, and "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The proffered records constitute "such relevant evidence as a reasonable mind might accept as adequate to support" the RFC finding in this case. *See* Consolidated Edison Co., 305 U. S. at 229. *Cf. Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir.

2010) ("The ALJ's . . . RFC to perform light work was supported by objective evidence of physical examinations at which physicians reported Mancuso's full range of motion and strength in her upper and lower extremities, ability to walk without difficulty, and lack of muscle atrophy."). And a qualified vocational expert identified specific jobs existing in the national economy that an individual with this RFC, age, education, and work experience would be able to perform. [Record No. 7-2, pp. 24-25]

## IV.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Plaintiff Emily LaBona's request to remand this matter to the Social Security Administration [Record No. 8] is **DENIED**. The final administrative decision of the Acting Commissioner of Social Security is **AFFIRMED**.

Dated: June 29, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky